## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
FIRST NBC BANK,

          Petitioner,

v.

DANIEL BELCHER,

          Respondent.

Case No. 2:19-cv-12561

Judge Jay C. Zainey (Sec. A)
Magistrate Michael North (Div. 5)

### MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S
### MOTION FOR SUMMARY ENFORCEMENT AND IN SUPPORT OF
### RESPONDENT'S MOTION TO DISQUALIFY AND MOTION TO QUASH

### INTRODUCTION

This matter involves a serious breach of federal law and professional ethics by attorneys for the Federal Deposit Insurance Corporation as Receiver for First NBC Bank ("Receiver"). Seeking to pursue potential claims against Ernst & Young LLP ("EY"), these attorneys improperly sought and obtained statutorily-protected "confidential and privileged" EY materials ███████ ████████████████████████████████████████████████████████ In so doing, they violated ████ ████████████ and the Louisiana Rules of Professional Conduct, and infringed the rights of EY and Respondent Daniel Belcher.  To remedy that violation, the Receiver's in-house lawyers with access to the improperly-obtained materials, as well as the Receiver's outside litigation law firm, Schiff Hardin LLP, should be disqualified from all further involvement in these proceedings.

By federal statute, information ██████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████



FNBC had a subsidiary, First NBC Bank ("Bank").  The Bank was placed in receivership in April 2017, with the FDIC appointed as Receiver.  Since then, the Receiver has stated publicly that it is considering pursuing the Bank's claims against EY, to the extent such claims exist.  It is well-established that the Receiver is a private litigant—not the government.  The Receiver "steps into the shoes of the failed bank and is bound by the rules that the bank itself would encounter in litigation." *FDIC v. Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004).

This includes thousands of pages of transcripts that the Receiver never would have had a right to obtain. It further includes multiple categories of documents that EY asserted were protected against disclosure under Louisiana law (separate and apart from federal law), and which counsel for the Receiver had explicitly agreed *not* to seek.

Counsel for the Receiver knowingly obtained reams of confidential and privileged documents in breach of federal law and basic tenets of legal ethics.  And when their actions were exposed, they repeatedly refused even to acknowledge receipt of the materials—let alone attempt to remediate their wrongdoing.  Governing ethical principles prohibited the Receiver from

obtaining evidence in violation of EY's and Mr. Belcher's legal rights, and from exploiting that inappropriately obtained evidence, as attested to by two prominent legal ethics experts (Professors Dane Ciolino and Bruce Green) whose opinions are incorporated herein.

The Receiver now argues that this Court should "summarily" enforce subpoenas so that its same counsel—the ones tainted by the improper receipt of confidential and privileged information—may take testimony from Mr. Belcher and other EY personnel.  The Receiver asserts that its violations of federal law and professional ethics are "irrelevant" and that it has a "right to proceed" no matter what.  Pet. 4; Mem. 2 (Rec. Doc. 5-1).  Yet it does not contest—nor can it do so in light of the ███████ recent disclosure—that the Receiver's attorneys obtained, reviewed, and used EY's confidential and privileged information.

Rather than granting the Receiver's request for relief, this Court should (1) disqualify the Receiver's lead law firm (Schiff Hardin LLP) and in-house counsel, as well as anyone else who had access to the information; (2) deny the Receiver's motion and petition; (3) quash the pending subpoena to Mr. Belcher unless and until the Receiver retains new counsel; and (4) authorize discovery regarding the extent to which confidential and privileged materials improperly have been shared and used, to ensure that any taint from these proceedings can be removed by an appropriate remedy.

Neither EY nor Mr. Belcher takes the request for disqualification lightly.  But under these circumstances, there is no other remedy adequate to vindicate their rights and to ensure fairness.

## BACKGROUND

### A.    First NBC Bank Holding Company.

EY performed audits of the financial statements issued by First NBC Bank Holding Company, a public company.  EY's audits were pursuant to engagement agreements that specified

EY had been retained by "the Audit Committee of First NBC Bank Holding Company (the 'Company') to audit the Company's financial statements and its internal control over financial reporting." Ex. 2; *see* Exs. 1, 3.[1]  EY's opinions, which FNBC included in its publicly-filed Form 10-K, made clear they were with respect to "First NBC Bank Holding Company."  *E.g.*, Ex. 4.[2]

As a bank holding company, FNBC was regulated by the Federal Reserve—not the FDIC. FNBC specifically disclosed this in its SEC filings.  *See, e.g.*, *id.* at 2 ("We are a bank holding company registered under the Bank Holding Company Act of 1956, as amended, and are subject to supervision, regulation and examination *by the Federal Reserve*.").   Indeed, it is public knowledge that the Federal Reserve regulates bank holding companies, not the FDIC.  *E.g.*, Bd. of Governors of the Federal Reserve System, *Bank Holding Company Supervision Manual* 2 (2019) ("Banks are often owned or controlled by another company, called a bank holding company (BHC). The Federal Reserve has supervisory and regulatory authority for all BHCs, regardless of whether subsidiary banks of the holding company are national banks, state member banks, or state nonmember banks.").[3]  The Receiver does not contend otherwise.

FNBC declared bankruptcy in May 2017.  An Official Committee of Unsecured Creditors ("Creditors' Committee") has been established and granted authority to bring claims for the benefit of the FNBC bankruptcy estate.  Invoking that power, the Creditors' Committee already has asserted claims against EY on behalf of FNBC.  *See Official Comm. of Unsecured Creditors of First NBC Bank Holding Co. v. Ryan*, No. 2:19-cv-10341 (E.D. La.).

---

[1] All Exhibits are to the Declaration of Steven M. Farina.  All internal quotation marks have been omitted from citations unless otherwise noted, and all emphasis is added.

[2] The Receiver misleadingly refers to both the Bank and FNBC at times as "FNBC."  This blurs the critical distinction between the two entities—a distinction that is dispositive of the questions presented by this case. In this brief, "FNBC" refers to the audit client holding company, FNBC.  "Bank" refers to First NBC Bank.

[3] Available at https://www.federalreserve.gov/publications/files/bhc.pdf.

**B.**   ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████▌

████████████████████████████████████████

████████████████████████████   Applicable Louisiana law protects "[p]ersonnel files," "[p]lanning and procedure manuals," and "[n]otes and comments made in the course of evaluating the efforts of any licensee or employee, partner, shareholder, or member of a licensee in the performance of an engagement."  La. Stat. Ann. § 37:86(B).

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

▌████████████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

### C.     First NBC Bank and the Receiver.

FNBC had a subsidiary, known as First NBC Bank.  The Bank—which was not a public company—was placed in receivership in April 2017, with the FDIC appointed as receiver.  Pet. 2. The receivership extended only to the Bank, not FNBC.  *See* Ex. 9.  As noted earlier, FNBC went into a separate bankruptcy proceeding.

The Receiver has publicly stated—and reaffirms in its Petition—that it is considering whether to bring suit against EY, asserting claims on behalf of the Bank.  *See* Pet. 4.  The Receiver says it has "at least until April 2020 to file any claim against EY."  *Id*. 4.  In bringing such a claim, the Receiver would stand in the shoes of the Bank rather than acting as a regulator.  Its "role is tantamount to that of a private party, and not the government *per se*."  *AG Route Seven P'ship v. United States*, 57 Fed. Cl. 521, 534 (Fed. Cl. 2003).  That is, "[w]hen acting in its receivership capacity, the FDIC is not an agency of the United States."  *FDIC v. Flagship Auto Ctr., Inc.*, 2009 WL 484175, at *3 (N.D. Ohio Feb. 25, 2009).

In pursuit of potential claims, the Receiver has sought pre-litigation discovery from EY under statutory authority.  *See* 12 U.S.C. § 1818(n); Pet. 3–4.  This authority includes obtaining documents and issuing subpoenas for testimony.  More than a year ago, in response to a subpoena for documents by the Receiver, EY invoked certain statutory protections afforded under Louisiana law, La. Stat. Ann. § 37:86(B).  Farina Decl. ¶ 19.  The Receiver contested EY's position, but rather than present that dispute to a court for resolution, it agreed "to defer certain categories of documents   requested . . . in   exchange   for   Ernst   &   Young   LLP   ('EY')   waiving   the

requirement . . . under La. R.S.37:107 ('Accountant Review Panel')."  Ex. 10.[5]  The parties

executed a written agreement, expressly premised on "the intention of the Parties to defer certain

disputes over production of documents."  Ex. 11 (Public Accountant Review Panel Waiver and

Document Production Agreement (the "Agreement")).

EY agreed that "the use of a public accountant review panel is hereby permanently and

forever waived as to any and all claims, demands, or causes of action that have been or hereafter

may be asserted by the [Receiver] against EY."  Ex. 11 ¶ 1.  In turn, the Receiver agreed:

> [I]n connection with its Investigation, it shall not seek through any administrative
> subpoena issued to EY or any petition to enforce such subpoena to compel EY to
> produce the following categories of documents ("Deferred Discovery"): (i)
> personnel files for members of the audit teams who worked on EY's audits of First
> NBC Bank Holding Company's financial statements and its internal control over
> financial reporting ("First NBC Audits") (ii) training or audit manuals, and (iii) the
> documents requested in Request number 26 of the subpoena, including any AQR
> or EQR documents relating to the First NBC Audits.

*Id* ¶ 3.  Thus, the Receiver obtained something of value from EY—a waiver of the Accountant

Review Panel.  EY believed that it had obtained something of value in return—an agreement by

the Receiver not to pursue materials protected by Louisiana statutory privileges.  The Agreement

was negotiated by external counsel from Schiff Hardin and signed on behalf of the Receiver by in-

house counsel Gregory Conway.  Farina Decl. ¶ 22.

The Receiver has since sought testimony from six current and former EY personnel,

including Mr. Belcher.  Pet. 4.  ████████████████████  this testimony is scheduled to be

completed in one day per witness, including the coordinating partner.  *Id*. ¶ 23.  The subpoenas for

the testimony were signed by Mr. Conway and served by Schiff Hardin.  *See* Pet. Ex. B.

---

[5] Under Louisiana law, "[a]ll claims against certified public accountants or firms, other than claims validly
agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a public accountant
review panel" as a prerequisite to bringing suit.  La. Stat. Ann. § 37:102(A).

**D.      The Receiver's Counsel Obtains Confidential and Privileged Information.**

Without notice to EY, the FDIC sought and obtained confidential and privileged materials

██████████████████████████████████████████████ The disclosure first came

to light during testimony by an EY witness in connection with an investigation by the FDIC acting

in its separate corporate capacity ("FDIC-C"), represented by separate counsel.[6] ██████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ Farina Decl. ¶ 24.

After becoming aware that the FDIC had obtained confidential and privileged materials,

counsel for EY contacted Mr. Conway on July 29, 2019, to ask whether the Receiver had obtained

any documents ██████████████████████ Mr. Conway refused to answer. *Id.* ¶ 25.

EY's counsel sent the Receiver's counsel at Schiff Hardin a follow-up letter on August 12.

Ex. 12.  The letter stressed that EY "consider[s] this to be a very serious matter" and again asked,

among other things, █████████████████████████████████████████████████

████████████████████████ has been provided to the [Receiver] or any of its counsel, whether in-

house or external (including, but not limited to, attorneys at Schiff Hardin), and inform us of

whether it has." *Id.*  Responding on August 21, the Receiver's counsel again refused to disclose

whether—let alone to what extent—the Receiver had obtained the materials.  Ex. 13.

Counsel for EY then followed up again on August 23, noting, "The only conclusion we

can draw is that the FDIC improperly has obtained such information, but that you wish to withhold

---

[6] "The FDIC plays a dual role: in its corporate capacity ('FDIC–C'), it acts as insurer, regulator and supervisor of FDIC insured banks.  But the FDIC also acts as receiver ('FDIC–R') for failed national banks and federal thrifts . . . .  The FDIC as receiver is functionally and legally separate from the FDIC acting in its corporate role."  *Anchor Sav. Bank, FSB v. United States*, 121 Fed. Cl. 296, 323 (Fed. Cl. 2015); *see infra* p. 14 & n.9.

that fact from EY." Ex. 14.  The letter explained, "No lawyer with access to confidential and privileged information should be conducting examinations of EY witnesses or participating in an investigation involving EY."  *Id.*

████████████████████████████     ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████  As disclosed in the letter, the breach of the statutory privilege was extensive.  The information obtained by the FDIC included the transcripts and exhibits from the testimony of six of the eight EY witnesses, including Mr. Belcher.  And it included more than 230,000 pages of emails (including nearly all emails produced by EY ██████████), audit workpapers, and other documents.  Ex. 15.  Indeed, the documents obtained by the FDIC included the specific categories of documents that EY had asserted were covered by Louisiana statutory protections and that the Receiver had agreed not to pursue:  documents relating to personnel reviews, documents relating to an internal firm review of the audit, and internal firm audit guidance.  *Id.* ¶ 30.

On the same day █████████████, counsel for the Receiver held a meet-and-confer call with EY counsel.  While still not explicitly acknowledging it, counsel for the Receiver did not dispute receiving information ██████████.  Nonetheless, counsel for the Receiver maintained that recusal from this matter of any counsel (outside or in-house) who had reviewed the confidential and privileged materials was a "non-starter."  *Id.* ¶ 31.  Despite repeated requests for additional information, the Receiver refused to disclose how or when it obtained the materials, how or when the materials had been provided to Schiff Hardin, or what use the in-house or outside counsel had made of them.  *Id.* ¶ 32.

## LEGAL STANDARD

"[D]isqualification cases are governed by state and national ethical standards adopted by the court." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001) (quoting *FDIC v. U.S. Fire Ins.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995)).  "A court must take into account not only the various ethical precepts adopted by the profession but also the social interests at stake[,]" including whether the lawyer's conduct "'has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case.'"  *U.S. Fire Ins.*, 50 F.3d at 1314 (quoting *In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir. 1992)).  Ultimately, "any doubts are to be resolved in favor of disqualification." *United States v. Daniels*, 2017 WL 2462445, at *2 (E.D. La. June 7, 2017). Indeed, "courts must not hesitate to disqualify an attorney" when circumstances warrant.  *Bona Fide Conglomerate v. Sourceamerica*, 2016 WL 4361808, at *10 (S.D. Cal. Aug. 16, 2016).

In addition, while judicial review of administrative subpoenas is generally confined, "there are limits" to what use an administrative subpoena may be put and what may be demanded.  *United States v. Morton Salt Co.*, 338 U.S. 632, 653 (1950).  Among other things, courts have held that such a subpoena must be "within the statutory authority of the agency" and issued for a "legitimate purpose," and must not be "unreasonably broad or burdensome."  *Burlington N. R.R. Ret. Bd. v. Office of Inspector Gen.*, 983 F.2d 631, 637–38 & n.2 (5th Cir. 1993).  The court also has discretion "to prevent other forms of agency abuse of congressional authority and judicial process," as well as to "fashion appropriate rules as to the fairness of the enforcement order." *SEC v. ESM Gov't Sec., Inc.*, 645 F.2d 310, 314–15 (5th Cir. 1981).

**ARGUMENT**

I.  **THE RECEIVER'S RECEIPT OF CONFIDENTIAL AND PRIVILEGED INFORMATION VIOLATED FEDERAL LAW.**

Both federal law ███████████ expressly prohibited the Receiver and its outside litigation counsel from obtaining EY's and Mr. Belcher's confidential and privileged information.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



By contrast, the Bank "is a commercial bank chartered under the laws of the State of Louisiana. The [B]ank is not a member of the Federal Reserve System and is subject to supervision, regulation and examination by the Louisiana Office of Financial Institutions, or OFI, and the [FDIC]." *Id*. This distinction is known to the FDIC. Its own website explains that the Federal Reserve has "responsibility" for "[b]ank holding companies." Ex. 16.[7]

Indeed, the Receiver does not even argue that the FDIC is the regulator of FNBC.

Pet. 5. And that is precisely the point. The Receiver is *not* the regulator *of FNBC*. That is the end of the inquiry under the law's plain text.

It is of no bearing that EY's audit reports in some sense "*relate to*" a bank regulated by the FDIC, Mem. 6, insofar as the Bank was a subsidiary of FNBC. Again, that is *not* the test under the plain text of the law. The law is clear

Here, as the Receiver expressly concedes, "*the audit opinion was issued at the holding company level*"—i.e., for FNBC. Mem. 7. And it was that public company, FNBC, "*which contracted with EY for the audit*." *Id*. n.4.[8]

---

[7] *See also Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 365 (1986) ("The Bank Holding Company Act of 1956, 12 U.S.C. §§ 1841 *et seq.,* vests broad regulatory authority in the [Federal Reserve] Board over bank holding companies."); Bd. of Governors of the Federal Reserve System, *Bank Holding Company Supervision Manual* 2.

[8] For the same reason, it makes no difference that the Bank could satisfy one of its own regulatory obligations because FNBC—"at the holding company level"—had audited consolidated financial

*Second*, in any event, the Receiver is not acting as a regulator at all.  As acknowledged in the Petition, it is acting "in its capacity as the duly appointed receiver for First NBC Bank."  Pet. 2.  When the FDIC acts as a receiver, it is "not the United States."  *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994).  Instead, the "FDIC–Receiver steps into the shoes of the failed bank and is bound by the rules that the bank itself would encounter in litigation."  *Ernst & Young LLP*, 374 F.3d at 581; *see also Ameristar Fin. Servicing, Co. v. United States*, 75 Fed. Cl. 807, 812 (Fed. Cl. 2007) (as conservator and receiver, the FDIC "[is] not acting as the United States"); *Flagship Auto Ctr.*, 2009 WL 484175, at *3 ("When acting in its receivership capacity, the FDIC is not an agency of the United States."); *AG Route Seven P'ship*, 57 Fed. Cl. at 534 (the Receiver's "role is tantamount to that of a private party, and not the government per se").[9]  So not only is the Receiver and its counsel not "*the appropriate* federal functional regulator" as to FNBC, they are not a "federal functional *regulator*" at all.

Underscoring all of this is the involvement of Schiff Hardin, the Receiver's outside litigation law firm.  There is obviously no plausible contention that it is acting as a regulator.  Schiff Hardin is a "general practice law firm representing clients across the United States and around the

---

statements.  12 C.F.R. § 363.2; Mem. 7.  Again, the audit opinion issued by EY was at "the holding company level."  And the regulator of the holding company was not the FDIC.  Nothing in the regulation cited by the Receiver changes that.

[9] *See also, e.g.*, *Mill Creek Grp., Inc. v. FDIC*, 136 F. Supp. 2d 36, 48 (D. Conn. 2001) (unlike the Receiver, the FDIC-C is "the agency of the United States that operates as regulator and corporate insurer"); *DeCell & Assocs. v. FDIC*, 36 F.3d 464, 469 (5th Cir. 1994) ("It is well-settled that the FDIC operates in two separate and legally distinct capacities, each with very different responsibilities."); *Dababeh v. FDIC*, 971 F.2d 428, 432 (10th Cir. 1992) ("That FDIC–C and [the Receiver] are legally two separate entities is a well accepted matter of law."); *Bullion Servs., Inc. v. Valley State Bank*, 50 F.3d 705, 708 (9th Cir. 1995) (FDIC-C and the Receiver are "two distinct entities with two entirely different purposes").

world." *See* Ex. 17.  Its lead counsel describes himself as "a trial lawyer and commercial litigator."

*Id.*  The law firm is not a federal regulator.[10]



Finally, the Receiver's reference to a letter to EY's counsel ██████████████████

█, does not salvage the Receiver's position.  The text of the federal law controls, not a conclusory

sentence in a post-hoc letter from counsel.  As the Supreme Court repeatedly has admonished,

"courts must presume that a legislature says in a statute what it means and means in a statute what

it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  Accordingly, so long

as the "statutory text is plain and unambiguous," courts "must apply the statute according to its

terms." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009).  Moreover, nowhere does the letter contend

that the FDIC—let alone the *Receiver*—was the regulator of FNBC.  Nowhere does it state that

the information could be provided to the Receiver specifically.  And nowhere does it state that it

---

[10] Indeed, even if the FDIC were somehow allowed to obtain the confidential and privileged information, it was required to ████████████████████████████████████████████████████
It could not simply provide it to Schiff Hardin.  That would constitute an additional violation of the law.

could be provided to outside litigation counsel for the Receiver in pursuit of claims on behalf of

the Bank.  It merely notes that the FDIC is a regulator—which is true, but again irrelevant unless

the FDIC ███████████████████████████████████████████████████████████████

███████████████████████

    In sum, this issue begins and ends with the plain text of federal law.  ███████████████

████████████████████████████████████████████████████████████  There

was no basis for the Receiver, or its outside litigation counsel, to obtain it.

## II.    DISQUALIFICATION IS REQUIRED.

    Obtaining the confidential and privileged information not only violated federal law, but

constituted a breach of legal ethics.  In these circumstances, disqualification of the Receiver's lead

law firm of Schiff Hardin, as well as in-house counsel and anyone else with access to the privileged

and confidential information, is warranted.[11]  This result is consistent with precedent from around

the nation, and it is further supported by the expert opinions of Professor Dane S. Ciolino of Loyola

University New Orleans College of Law, the author of *Louisiana Legal Ethics*, and Professor

Bruce A. Green of Fordham Law School, a nationally-known scholar of legal ethics.

### A.    The Receiver's Counsel Violated Professional Ethics.

    "Ethical canons relevant to a motion to disqualify include 1) the local rules of the district

court, 2) the American Bar Association's Model Rules of Professional Conduct, and 3) the forum

state's rules of attorney conduct."  *Burnett v. Olson*, 2005 WL 711602, at *2 (E.D. La. Mar. 18,

---

[11] There can be no dispute that the Schiff Hardin attorneys are lead counsel here.  Relevant communications concerning the subpoenas, testimony, and this action has been with them (including the correspondence attached to the Receiver's Petition).  The subpoenas were served by them.  And there is no dispute that they intend to take the testimony of Mr. Belcher and the other witnesses.  This Court has "inherent authority to police serious misconduct" in this instance.  *See In re Deepwater Horizon*, 824 F.3d 571, 578 (5th Cir. 2016) (per curiam) (rejecting argument that district court lacked power to sanction misconduct of attorney whose actions "were not before the District Court" because "the sanctions here addressed misconduct that threatened the integrity of a [proceeding] under the district court's direct supervision").

2005) (Zainey, J.).[12]  Here all potentially relevant standards of legal ethics point to the same conclusion: The Receiver's counsel engaged in "professional misconduct," Green Decl. ¶ 59; they "breached the applicable standards of care and conduct," Ciolino Decl. ¶ 43.

Under Louisiana Rule of Professional Conduct 4.4(a), a lawyer shall not "use methods of obtaining evidence that violate the legal rights of [a third] person."  Further, under Rule 4.4(b):

> A lawyer who receives a writing or electronically stored information that, on its face, appears to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear that the writing or electronically stored information was not intended for the receiving lawyer, shall refrain from examining or reading the writing or electronically stored information, promptly notify the sending lawyer, and return the writing or delete the electronically stored information.

Rule 4.4 of the ABA Model Rules of Professional Conduct contains similar prohibitions, as do the rules of professional conduct for other jurisdictions across the country.

Here the Receiver's counsel secretly obtained enormous amounts of evidence in "violat[ion] of the legal rights" of EY and Mr. Belcher, as expressly provided for under federal law ███████████.  Counsel invaded the privilege that protects that information.  *See, e.g.,* ABA Model Rule 4.4, cmt. 1 (noting that Rule 4.4 addresses "unwarranted intrusions into privileged relationships"); *Calise v. Brady Sullivan Harris Mills, LLC*, 2019 WL 1397245, at *1, *10 (D.R.I. Mar. 28, 2019) (violation where attorneys "came into possession" through their clients of "contractually protected confidential information" and privileged information); *In re Eisenstein*, 485 S.W.3d 759, 762–63 (Mo. 2016) (en banc) (violation where attorney obtained from client improperly obtained documents and direct examination questions).

---

[12] The Eastern District of Louisiana has adopted the Rules of Professional Conduct of the Louisiana State Bar Association as the local ethical standards.  *See* La. Local Rule 83.2.3.

Moreover, the Receiver's counsel were on notice that the documents, transcripts, and other information they received were confidential and privileged.  That much is apparent from the plain text of the federal law ███████████████████████████████████  Counsel do not argue they were unaware of the law—nor would any professed ignorance matter: "The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation."  *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563 (1971).  The confidential and privileged nature of this information also was apparent on the face of the documents. ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

Far from "promptly notify[ing]" counsel upon receipt of the information to arrange its return and/or deletion, the Receiver's counsel reviewed it and proceeded to schedule the depositions of EY witnesses while they were in the dark about the breach of their privilege.  In fact, even after being confronted by EY and Mr. Belcher's counsel about the receipt of the confidential and privileged information, the Receiver's counsel repeatedly would not even acknowledge having it.  And still today, counsel has not pledged to return or delete it.  If anything, it appears that counsel plans to continue to use it in developing its litigation claims.  *See Harris Davis Rebar, LLC v. Structural Iron Workers Local Union No. 1 Pension Tr. Fund*, 2019 WL 447622, at *5 (N.D. Ill. Feb. 5, 2019) (finding violation in light of "the principles underlying Rule 4.4(b), as well as obligations of decency, fundamental fairness, and frankly the golden rule").

In short, this is an open-and-shut violation. Ciolino Decl. ¶¶ 40–48; Green Decl. ¶¶ 49–57.

**B.      All Relevant Factors Weigh in Favor of Disqualification.**

As explained in more detail by Professors Ciolino and Green, all relevant considerations weigh in favor of disqualifying the Receiver's in-house and outside counsel as a result of their violations of federal law and legal ethics.  A "specter of unfairness [] has currently befallen this case," *Burnett*, 2005 WL 711602, at \*8, that requires disqualification to remedy.[13]

Courts routinely disqualify attorneys in circumstances where their improper exposure to and use of privileged or confidential materials "taints" the proceedings because such conduct, "if left unremedied, potentially undermines public confidence in the legal profession."  *Gifford v. Target Corp.*, 723 F. Supp. 2d 1110, 1118–19 (D. Minn. 2010).  After all, "the knowledge they wrongly obtained can never be erased from their minds."  *Camden v. Maryland*, 910 F. Supp. 1115, 1124 (D. Md. 1996); *see also, e.g.*, *Walker v. GEICO Indem. Co.*, 2017 WL 1174234, at \*12 (M.D. Fla. Mar. 30, 2017) (finding "all of the requirements for disqualification are met" where lawyers who received protected documents reviewed them and discussed them with their client, and "[t]he contents of the protected information is highly impactful"); *Richards v. Jain*, 168 F. Supp. 2d 1195, 1208–09 (W.D. Wash. 2001) (disqualification of law firm was only remedy for firm's improper review of privileged material); *Bona Fide Conglomerate*, 2016 WL 4361808, at \*10 (disqualifying counsel who listened to privileged and confidential recordings).

Here, there is not only an "appearance of impropriety," *U.S. Fire Ins.*, 50 F.3d at 1314, but an outright violation of federal law and professional ethics.  Counsel improperly obtained 24 days of testimony transcripts, hundreds of testimony exhibits, and hundreds of thousands of pages of

---

[13] *Burnett* involved disqualification due to a violation of Rule 1.9, but the concerns animating that ruling with respect to the attorney's unfair access to privileged information (obtained there because of a former attorney-client relationship) are precisely the same.  *See id.* at \*7–8; *see also Conwill v. Greenberg Traurig, LLP*, 2010 WL 11538418, at \*5 (E.D. La. Dec. 23, 2010) (disqualification where there was "a substantial risk" that confidential information from a prior representation could be used).

documents ▮▮▮▮▮▮▮▮—all of which were expressly "confidential and privileged," and all of which were directly relevant to potential claims against EY.  As Professor Ciolino concludes, the Receiver's counsel "have been incurably tainted."  Ciolino Decl. ¶ 55.

Further, EY and Mr. Belcher bear no conceivable blame for the Receiver secretly obtaining their confidential and privileged information.  This is not a case of inadvertent disclosure caused by carelessness.  To the contrary, EY and Mr. Belcher were blindsided by the revelation that the Receiver's counsel had obtained these materials.  And when counsel for EY and Mr. Belcher pressed for details about the receipt and use of the information, the Receiver's counsel refused even to concede that they had the materials.  It finally took a letter from ▮▮▮▮▮▮ to reveal the vast extent of information obtained.

Indeed, ▮▮▮▮▮▮▮, the materials obtained included the specific categories of documents that the Receiver agreed *not* to seek after EY asserted the application of Louisiana's state law privileges.  If the Receiver already had obtained those documents from ▮▮▮▮▮, or intended to do so, at the time that counsel entered into the Agreement, then the conduct of counsel during those negotiations was, at best, highly disingenuous and deceptive.  If the Receiver did not seek to obtain confidential and privileged information ▮▮▮▮▮▮ until after the Agreement, then the Receiver sought out and received materials as to which it *knew* EY had asserted a privilege, which the Receiver had agreed not to pursue.

Finally, the prejudice to EY and Mr. Belcher in submitting to questioning by attorneys who have been tainted with improperly-obtained information is obvious.  The Receiver's suggestion that Mr. Belcher and the other subpoenaed individuals will suffer no prejudice from "answer[ing] factual questions about the work they performed based on the documents EY produced to the [Receiver] or the Bank's own records," Mem. 5, wholly lacks merit.  The Receiver already has

*four days* of Mr. Belcher's testimony and volumes of other improperly-obtained documents that it never would have received. The improperly-obtained information undoubtedly will affect the proceedings, including the deposition at issue here.

On the other hand, the Receiver has stated it has "at least until April 2020" to pursue an action against EY. Pet. 4. This matter is still in its "very early stages"—before even a complaint has been filed. *See, e.g.*, *Burnett*, 2005 WL 711602, at *8; *Sanchez v. Maquet Getinge Grp.*, 2018 WL 2324679, at *7 (N.J. Super. Ct. App. Div. May 23, 2018). The Receiver still can pursue any claims it may have against EY without tainted counsel.

To be sure, "[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *U.S. Fire Ins.*, 50 F.3d at 1313. But this case presents precisely the type of situation where disqualification is the only appropriate remedy—and where, as discussed, courts have repeatedly held that disqualification is warranted. As Professor Green states, "If there were ever a case where disqualification of counsel is essential to remedy the wrongful acquisition of confidential and privileged materials, this is it." Green Decl. ¶ 64; *see also* Ciolino Decl. ¶ 52 (disqualification required "because disgorgement is insufficient to prospectively resolve the harm").

But even if there were a question, it is well settled that "any doubts are to be resolved in favor of disqualification." *Daniels*, 2017 WL 2462445, at *2; *Richards*, 168 F. Supp. 2d at 1209 (same); *United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 45 (D.D.C. 2004) (same). "[T]he dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." *Gifford*, 723 F. Supp. 2d at 1121.

### III.    THE MOTION SHOULD BE DENIED AND THE SUBPOENA QUASHED.

For many of the same reasons, the Court should deny the Receiver's motion to enforce its subpoena to compel an EY witness to appear for questioning.  Instead, the subpoena should be quashed until such time as the Receiver retains new litigation counsel and assigns new in-house counsel who are free of the taint of the improperly obtained information.  At that point, Mr. Belcher's testimony can be promptly rescheduled.  In fact, counsel for Mr. Belcher already have offered to present him for a deposition before untainted counsel, but the Receiver's lawyers have said they are not willing to do so.

"As a general rule, courts will enforce an administrative subpoena if: (1) the subpoena is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome."  *Burlington*, 983 F.2d at 638.  "Courts will not enforce an administrative subpoena, however, if the above requirements are not met or if the subpoena was issued for an improper purpose, such as harassment."  *Id.*

Here, it would be overly burdensome to compel compliance with the subpoena.  No witness should have to sit for a deposition by counsel who improperly learned privileged information.  An examination by tainted counsel would taint the entire deposition, and allowing it to go forward would condone counsel's wrongful conduct.  *Cf. In re Fosamax Prods. Liab. Litig.*, 2009 WL 2395899, at *3 (S.D.N.Y. Aug. 4, 2009) ("Discovery may be blocked if permitting it would create an undue burden that outweighs its necessity.  The burden encompasses both the personal hardship to the subpoenaed party and the wider social consequences of permitting discovery." (citation omitted)).  Likewise, the Receiver acts beyond its "authority" in seeking to enforce a subpoena while in possession of information in violation of federal law.  Moreover, the Receiver's conduct

demonstrates that it has issued its subpoenas for an improper purpose—namely, to capitalize on privileged information that it has no right to know or use in the examination of witnesses.

The Fifth Circuit has further recognized that assertion of the attorney-client privilege is a valid basis for challenging an administrative subpoena. *See SEC v. ESM Gov't Sec., Inc.*, 645 F.2d 310, 313–14 (5th Cir. 1981) (citing *Reisman v. Caplin*, 375 U.S. 440, 449 (1964)). Here the Receiver's subpoena is challenged on the basis of a statutory privilege akin to the attorney-client privilege. Protecting that privilege is yet another basis for quashing the subpoena.

Finally, courts are not precluded from expanding the list of appropriate grounds for challenging an administrative subpoena or from identifying abuses of process. Indeed, the Fifth Circuit has noted that "'[f]uture cases may well reveal the need to prevent other forms of agency abuse of congressional authority and judicial process.'" *ESM Gov't Sec.*, 645 F.2d at 314 (quoting *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 318 n.20 (1978)). To that end, courts have "the power to fashion appropriate rules as to the fairness of the enforcement order." *Id.* at 315.

Thus, in *ESM Government Securities*, the Fifth Circuit held that "fraud, deceit or trickery" were appropriate grounds for denying enforcement. *Id.* at 317. The court explained that "[w]hen [a] government agency [] invokes the power of a court to gather the fruits of its deception, we hold that there is an abuse of process." *Id.* at 316. The court further held that "[t]he correct approach for determining whether to enforce a summons requires that court to evaluate the seriousness of the violation under all the circumstances, including the government's good faith and the degree of harm imposed by the unlawful conduct." *Id.* at 317.

That analysis dictates that the subpoena be quashed here. The Receiver's counsel committed serious violations by obtaining confidential and privileged information; making an end-

23

run around a document discovery agreement between the parties.  It would be an abuse of process to allow the Receiver's tainted counsel to proceed with his deposition under the circumstances.

Whether viewed as a matter of burden, authority, abuse of process, or through any other lens, this case presents exactly one of the occasions in which an administrative subpoena must not be enforced.  There are—and must be—"limits."  *Morton Salt Co.*, 338 U.S. at 653.  Violating federal law and ethical obligations is without question one of them.

## IV.   DISCOVERY SHOULD BE ALLOWED.

The record to date provides ample grounds for disqualification and quashing the subpoena without further factual development.  But the Court should permit discovery to determine the extent of taint within the FDIC to ensure that the remedy here is adequate.

"The case law is clear that courts have broad discretion to decide whether to grant any formal discovery in disqualification proceedings and, if so, how much."  *Philip Morris Inc.*, 312 F. Supp. 2d at 35.[14]  The analysis turns on "the need for an adequate record for appellate review, rather than any precise form or scope of discovery."  *Id.*; *see also British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 2002 WL 987199, at *1–2 (S.D.N.Y. May 14, 2002) (exercising "broad discretion" to allow for depositions in disqualification proceeding).

In this case, discovery from the Receiver is necessary to ensure that any remedy is sufficient to remediate the violation of EY's and Mr. Belcher's rights.  In particular, discovery is warranted to establish the extent to which confidential and privileged information (or information derived

---

[14] *See also In re Office of Inspector Gen.*, 933 F.2d 276, 278 (5th Cir. 1991) (discovery permissible to oppose subpoena enforcement action where respondent "makes a preliminary and substantial demonstration of abuse"); *SEC v. Nicita*, 2008 WL 170010, at *1–2, 5 (S.D. Cal. Jan. 16, 2008) (in subpoena enforcement action brought by SEC in which respondents moved to quash and to disqualify SEC counsel for possessing attorney-client privileged documents, court held evidentiary hearing on certain disputed factual issues and required SEC to identify documents it reviewed).

from it) spread within the FDIC.  There may well be lawyers or others unknown to Mr. Belcher and EY to whom that information was provided.

## CONCLUSION

For the foregoing reasons, this Court should (1) disqualify the Receiver's lead law firm (Schiff Hardin) and in-house counsel, as well as anyone else who had access to the information; (2) deny the Receiver's motion and petition; (3) quash the pending subpoena to Mr. Belcher unless and until the Receiver retains new counsel; and (4) authorize discovery regarding the extent to which confidential and privileged materials improperly have been shared and used, to ensure that any taint from these proceedings can be removed by an appropriate remedy.

Mr. Belcher reserves the right to seek additional relief as warranted as additional facts are discovered.

September 26, 2019                                    Respectfully submitted,

                                                     */s/* Craig Isenberg
                                                     Craig Isenberg, 26903
                                                     Christine M. Calogero, 36818
                                                     BARRASSO USDIN KUPPERMAN
                                                     FREEMAN & SARVER, LLC
                                                     909 Poydras Street, Suite 2400
                                                     New Orleans, LA 70112
                                                     Telephone: (504) 589-9700
                                                     Facsimile: (504) 589-9701
                                                     cisenberg@barrassousdin.com
                                                     ccalogero@barrassousdin.com

                                                     Steven M. Farina, *pro hac vice*
                                                     Stephen J. Fuzesi, *pro hac vice*
                                                     WILLIAMS & CONNOLLY LLP
                                                     725 12th Street N.W.
                                                     Washington, DC 20005
                                                     Telephone: (202) 434-5000
                                                     Facsimile: (202) 434-5029
                                                     sfarina@wc.com
                                                     sfuzesi@wc.com

                                                     *Attorneys for Respondent Daniel Belcher*