UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST NBC BANK | CIVIL ACTION |
| VERSUS | NO. 19-12561 |
| DANIEL BELCHER | SECTION "A" (5) |

**ORDER AND REASONS**

Before the Court are four separate motions. First, a **Motion for Summary Enforcement of Administrative Subpoena (Rec. Doc. 5)** filed by the Plaintiff Federal Deposit Insurance Company ("FDIC"). Second, a **Motion to Quash Subpoena (Rec. Doc. 23)** filed by the Defendant Daniel Belcher. Third, a **Motion to Disqualify Counsel (Rec. Doc. 24)** also filed by Belcher. Fourth, a **Motion to Intervene (Rec. Doc. 27)** filed by Ernst & Young LLP ("EY"). These motions, all set for submission on October 30, 2019, are before the Court on the briefs without oral argument. For the following reasons, the Court grants the FDIC's Motion for Summary Enforcement of Administrative Subpoena and denies the three other remaining motions.

I. **BACKGROUND**

First NBC Bank Holding Company ("Holding Company") employed the public accounting firm, EY, to perform audits over its issued financial statements. (Rec. Doc. 23-23, p. 3, Belcher's Opposition to the FDIC's Subpoena). Each opinion made by EY was made with respect to the Holding Company and was included in the Holding Company's yearly required 10-K. *Id*. However, the Holding Company's only asset was First NBC Bank ("Bank"). (Rec. Doc. 49, p. 2, FDIC's Response Memorandum). Thus, EY's annual audit was performed on a consolidated basis and included the financial statements of both the Holding Company

and the Bank. *Id*. Further, these consolidated statements were required to be filed with both the Federal Reserve, through Form FR Y-9C, and the FDIC, through a Part 363 Annual Report.[1] *Id*.

During the Bank's financial distress, the Public Company Accounting Oversight Board ("PCAOB") initiated a confidential investigation relating to EY's audits of the Holding Company and the Bank between 2013 and 2015. (Rec. Doc. 23-27, Letter from EY). In connection with this investigation, EY produced thousands of pages of documents to the PCAOB,[2] including audit workpapers, emails, proprietary firm guidance and methodology, personnel files and reviews, firm audit quality review documents, and other documents. (Rec. Doc. 23-23, p. 6, Belcher's Opposition to the FDIC's Subpoena). In total, eight EY auditors provided a combined 28 days of testimony to the PCAOB, generating over 62,000 transcript pages and using 390 exhibits. *Id*. Further, the PCAOB assured EY and its deponents that, pursuant to 15 U.S.C. § 7215(b)(5), the documents, testimony, and other information provided to the PCAOB and its staff were privileged, confidential, and exempt from disclosure under the Freedom of Information Act. *Id*. Similarly, each time EY disclosed any documents to the PCAOB, the following verbiage was included: "in the event that the PCAOB receives any request for the Confidential Materials [that EY provided] from any third-party or plans to provide the Confidential Materials to any third party, EY requests that the [EY's counsel] be

---

[1] "Each insured depository institution shall file with each of the FDIC, the appropriate Federal banking agency, and any appropriate State bank supervisor, two copies of its Part 363 Annual Report. A Part 363 Annual Report must contain audited comparative annual financial statements, the independent public accountant's report thereon, a management report, and, if applicable, the independent public accountant's attestation report on management's assessment concerning the institution's internal control structure and procedures for financial reporting[.]" 12 C.F.R. § 363.4.

[2] Although these types of documents are normally protected from disclosure under La. Stat. Ann. § 37:86(B), 15 U.S.C. § 7215 supersedes these protections. *See e.g., Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Tr. Corp.*, 5 F.3d 1508, 1513 (D.C. Cir. 1993) (rejecting assertion of state privilege in response to federal administrative subpoena governed by federal law); *United States v. Zadeh*, 820 F.3d 746, 752 (5th Cir. 2016) (investigation pursuant to federal Controlled Substances Act controls and overrides state patient confidentiality statute.).

notified of such request or plan, and be furnished a copy of all written materials pertaining to such request or plan." *Id*. 6-7.

Then, in May of 2017, the Holding Company declared bankruptcy, and the Louisiana Office of Financial Institutions closed the Bank and appointed the FDIC as its receiver. (Rec. Doc. 5-5, p. 2, FDIC's Memorandum in Support). The FDIC subsequently issued an Order of Investigation authorizing a probe into the work performed by EY, and the FDIC began requesting documents from the PCAOB. *Id*. at 3. After the PCAOB's Board of Directors received this request, the PCAOB's Board authorized the disclosure of particular records to the FDIC, which included deposition transcripts and other documents that it had received from EY. (Rec. Doc. 49, p. 4, FDIC's Response Memorandum). However, the PCAOB never notified EY that it made these disclosures to the FDIC.[3] (Rec. Doc. 23-23, p. 6-7, Belcher's Opposition to the FDIC's Subpoena).

As the FDIC's investigation developed, it subsequently issued subpoenas for six administrative depositions of current and former EY personnel. (Rec. Doc. 5-5, p. 3, FDIC's Memorandum in Support). Of the six scheduled depositions, the FDIC scheduled Mr. Belcher's first. *Id*. However, three days before his deposition, Mr. Belcher notified the FDIC that he would not be attending the deposition because the PCAOB had improperly shared classified EY documents and testimony with the FDIC. *Id*. Thus, the FDIC filed this instant suit to compel Mr. Belcher's deposition and it named "Mr. Belcher, not the other five individuals, in [its Complaint] because he was scheduled to testify first and he canceled his deposition. *Id*. at 2, n. 2. The FDIC further explained in its Complaint that, "[c]ompelling Mr.

---

[3] The Court notes that neither the PCAOB nor the FDIC ever agreed to follow EY's request to give notification of a disclosure during either entities' confidential investigation. (Rec. Doc 44, p. 5, FDIC's Reply Brief). Further, neither entity was required by law to give such notice. *See e.g.,* 12 C.F.R. § 308.147 ("Investigations shall be confidential. Information and documents obtained by the FDIC in the course of such investigations shall not be disclosed[.]").

Belcher's deposition will resolve the objection to all of the depositions [for the remaining EY auditors]." *Id*. Lastly, as to why EY was not named as a party in this suit, the FDIC stated in its Memorandum in Support that: "EY is not a Respondent to these subpoenas to individuals for their depositions, is not entitled to notice of these administrative depositions issued in a confidential investigation[,] and accordingly is not a party to this action." *Id*.

In response to the suit and the FDIC's Motion for Summary Enforcement of Administrative Subpoena (Rec. Doc. 5), Belcher filed a Motion to Quash Subpoena (Rec. Doc. 23) and a Motion to Disqualify Counsel (Rec. Doc. 24). Further, EY filed a Motion to Intervene (Rec. Doc. 27). The Court will next analyze the merits of the FDIC's motion for summary enforcement of the subpoena issued to Belcher.

II. **MOTION FOR SUMMARY ENFORCEMENT OF ADMINISTRATIVE SUBPOENA**

a. **FDIC's Organizational Structure**

"The FDIC is an instrumentality created by Congress to promote stability and restore and maintain confidence in the nation's banking system." *FDIC v. Bank of Boulder*, 865 F.2d 1134, 1136 (10th Cir. 1988). To achieve these goals, the FDIC acts in its corporate capacity (*i.e.*, FDRC-C) by insuring bank deposits and paying depositors after an insured bank fails. *id*.; *see also FDIC v. Sumner Fin'l Corp.*, 602 F.2d 670, 679 (5th Cir. 1979). In addition, the FDIC's Board of Directors can appoint the FDIC to act as a receiver (*i.e.*, FDIC-R) for an insolvent state bank to prevent losses to the deposit insurance fund. 12 U.S.C. § 1821(c).

When the FDIC is appointed as receiver, it acts simultaneously in two separate capacities: as receiver of the failed bank and as insurer of the deposits. *Bank of Boulder*, 865 F.2d at 1136. Thus, under federal law, the FDIC is empowered to act in "'two entirely separate and distinct capacities' in proceedings involving an insured state bank." *Sumner Fin'l Corp.*, 602 F.2d at 679 (quoting *FDIC v. Abraham*, 439 F. Supp. 1150, 1151 (E.D. La. 1977)); *see*

*also FDIC v. Glickman*, 450 F.2d 416, 418 (9th Cir. 1971) (recognizing FDIC's "dual capacity as federal insurer of deposits and as liquidating agent for the bank"); *FDIC v. de Jesus Velez*, 678 F.2d 371, 374 (1st Cir. 1982) ("It seems apparent that the FDIC must be permitted to operate in a dual capacity simultaneously, as a receiver and an insurer, to carry out its functions as a receiver, liquidator, and insurer."). Although the FDIC can act in two separate capacities, it still only has one Board of Directors. *See* 12 U.S.C. §§ 1812(a), 1819(a).

### a. Disclosing the Bank's Confidential Information to the FDIC

The PCAOB "is a Government-created, Government-appointed entity, with expansive powers to govern an entire industry[, and the] Board is charged with enforcing the Sarbanes–Oxley Act, the securities laws, the Commission's rules, its own rules, and professional accounting standards. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 485 (2010). Under 15 U.S.C. § 7215(b)(5)(A):

> all documents and information prepared or received by or specifically for [the PCAOB], and deliberations of the Board and its employees and agents, in connection with an [investigation], shall be confidential and privileged as an evidentiary matter . . . and shall be exempt from disclosure, in the hands of an agency or establishment of the Federal Government, under the Freedom of Information Act[.]

However, under the PCAOB's discretion, these confidential records may be disclosed to: "the appropriate Federal functional regulator (as defined [by 15 U.S.C. § 6809]) . . . with respect to an audit report for an institution subject to the jurisdiction of such regulator[.]" § 7215(b)(5)(B)(ii)(II). Further, 15 U.S.C. § 6809(2) labels the "Board of Directors of the Federal Deposit Insurance Corporation" as one of six "Federal functional regulators."

Further, the Bank, as an FDIC insured and regulated institution, was required to have an annual audit report on its financial statements and internal controls, and that audit report was required to be filed with the FDIC. *See* 12 U.S.C. § 1831m(a), (d); 12 C.F.R. §§ 363.1(b), 363.2(a)-(b), 363.4(a). Part 363.1(b) specifically governs "compliance by subsidiaries of

holding companies" and provides that a holding company's financial statements satisfy a bank's regulatory requirements under the FDIC Improvement Act. 12 C.F.R. § 363.1(b). As a result, the Holding Company filed EY's audit reports with the FDIC to satisfy § 1831(m) and Part 363. *See* (Rec. Doc. 44-7, Ex. A, Ex. 2) (evidencing the Bank's submission of the EY audit report and audited financial statements to the FDIC for the 2014 fiscal year.).

In his Opposition to the administrative subpoena, Belcher makes two arguments for why the PCAOB violated the confidentiality requirements of § 7215(b)(5)(A) by sharing its EY investigative documents with the FDIC. First, Belcher argued that EY's audit reports were only "for" the Holding Company by saying: "[t]he audit report must be '*for* an institution subject to the jurisdiction of such regulator.'" (Rec. Doc. 63, p. 3, Belcher's Reply). "It is not enough that the audit report be for the parent (or shareholders or lenders) of the institution." *Id*. Belcher bolstered this position by pointing to the text of the audit report and noted: "[n]ot only did it specify on the first page that '[t]he audit report and financial statements cover a Holding Company,' but the audit report itself expressly addressed only 'First NBC Bank Holding Company.'" *Id*. at 5.

Here, the Court finds Belcher's arguments unconvincing. § 7215 allows the PCAOB to share with the appropriate Federal functional regulator with respect to "an audit report *for an institution* subject to the jurisdiction of such regulator[.]" § 7215(b)(5)(B)(ii)(II) (emphasis added). Belcher seems to define the term "institution" to mean "issuer." An "issuer" is an entity that offers debt securities or equity securities for sale to investors. 15 U.S.C. § 78c(a)(6). This distinction between "institution" and "issuer" is important in the context of this case because only the Holding Company would constitute an "issuer," not the Bank. However, the statute's use of the term "institution" is more all-encompassing and seemingly includes a bank along

with its associated holding company.[4] Thus, the Court finds that EY's audit reports were "for" the Holding Company *and* the Bank.

Second, Belcher argues that the Federal Reserve is the only appropriate "Federal functional regulator" in this case. (Rec. Doc. 63, p. 3, Belcher's Reply). Belcher explained by saying, "[t]he 'Federal Functional regulator' for [the Holding Company] was the Federal Reserve because, as publically disclosed, [the Holding Company] is 'a bank holding company registered under the Bank Holding Company Act of 1956.'" (Rec. Doc. 23-23, p. 13, Belcher's Opposition to the FDIC's Subpoena). "It is no bearing that EY's audit reports in some sense 'relate to' a bank regulated by the FDIC insofar as the Bank was a subsidiary of [the Holding Company]." *Id*. (citations omitted). "The law is clear that the confidential and privileged information may only be shared if the audit report was for the very 'institution subject to the jurisdiction of such regulator.'" *Id*. Thus, "as the [FDIC] expressly concedes, *the audit opinion was issued at the holding company level* – i.e., for [the Holding Company]." *Id*. (citations omitted). "And it was that public company, [the Holding Company], which contracted with EY for the audit." *Id*. Lastly, Belcher contends that "it is irrelevant that FDIC regulations 'provide[] that a holding company's audited financial statements satisfy a bank's regulatory requirements.'" (Rec. Doc. 63, p. 4, Belcher's Reply). "They are still the '*holding company's* audited financial statements.'" *Id*. Thus, "[t]he FDIC was not the regulator with respect to [the Holding Company.]" *Id*. at 3. "That was the Federal Reserve." *Id*.

Here, the Court is also unconvinced by Belcher's second argument and finds that the Federal Reserve and the FDIC were both appropriate "Federal functional regulators" of EY's audit reports. As a starting point, § 6809 specifically defines this term for Title 15. More

---

[4] Although the term "institution" is not defined in 15 U.S.C. § 78c, it is used in Title 15 to encompass banks. *See* 15 U.S.C. § 78c(a)(6) (defining "bank" to include a "banking institution"); id § 78c(a)(34)(H) (using "institution" to refer to various entities including FDIC-insured banks).

specifically, the statute states: "[t]he term 'Federal Functional regulator' means -- (A) the Board of Governors of the Federal Reserve System . . . (C) the Board of Directors of the Federal Deposit Insurance Corporation[.]" 15 U.S.C. § 6809(2). Thus, under the statute, both the Federal Reserve and the FDIC are appropriate "Federal functional regulators." Further, the financial statements audited by EY were done on a *consolidated* basis and included the financials for both the Holding Company and the Bank.[5] These consolidated financial statements were then required to be submitted to the FDIC under 12 C.F.R. § 363.1(b). Therefore, because the Holding Company's consolidated financials were required to be submitted to the FDIC, the Court finds no basis to support Belcher's contentions that EY's audit reports were only "for" the Federal Reserve.

Accordingly, the Court finds that the PCAOB did not act improperly by disclosing its investigatory documents to the FDIC's Board of Directors under 15 U.S.C. § 7215(b)(5)(B)(ii)(II).[6]

### b. The FDIC-R was the Appropriate "Federal Functional Regulator"

Belcher's next contention is that, even if the FDIC was the appropriate functional regulator of the EY audit report, the FDIC-R, in its capacity as receiver, does not constitute a

---

[5] "The accompanying consolidated financial statements include the accounts of the [First NBC Bank Holding] Company and First NBC Bank, and First NBC Bank's wholly owned subsidiaries[.]" (Rec. Doc. 5-2, p. 65, The Holding Company's 10-k).

[6] The Court notes that the FDIC and EY entered into an agreement which called for EY waiving its right to seek a review by a public accountant review panel pursuant to La. Rev. Stat. § 37:107 in exchange for the FDIC "not seek[ing] through any administrative subpoena issued to EY or any petition to enforce such subpoena to compel EY to produce the following categories of documents: (i) personnel files . . . (ii) training or audit manuals, (iii) the documents requested in Request number 26 of the subpoena[.]" (Rec. Doc. 44, Exhibit 2). Belcher then pointed out that the FDIC had improperly received from the PCAOB the documents it agreed it would not subpoena from EY and argued that "[i]ndeed, as revealed by the PCAOB, the materials obtained included the specific categories of documents that the [FDIC-R] agreed *not* to seek after EY asserted the application of Louisiana's state law privileges." (Rec. Doc. 23-32, p. 20, Belcher's Memorandum in Support). However, the Court finds Belcher's position meritless because the FDIC received the documents in question from the PCAOB, not from EY. As noted in the FDIC's Reply brief, "[n]othing in the Agreement restricted the FDIC-R's right to receive documents from the PCAOB." (Rec. Doc. 44, p. 23, FDIC's Reply Brief).

"regulator" under 15 U.S.C. § 7215. (Rec. Doc. 63, p. 5, Belcher's Reply). As Belcher notes in his Reply, "[t]he FDIC, in its capacity as Receiver for First NBC Bank, steps into the shoes of the Bank as a private litigant – represented here by commercial litigators from a private law firm." *Id*. "The Receiver is not regulating in any sense of the term; rather, like any plaintiff, it is pursuing litigation with the hope of obtaining money damages." *Id*. Thus, "[t]he Receiver succeeds to the 'rights, titles, powers, and privileges' of the Bank and 'is bound by the rules that the bank itself would encounter in litigation.'" *Id*. (internal citations omitted). "Acting in this capacity, the Receiver is legally separate from the FDIC in its capacity as regulator." *Id*.

However, Belcher's reading of the statute fails to take into account the definition of "Federal functional regulator" in 15 U.S.C. § 6809. There, the statute defines the *Board of Directors* of the FDIC as a "Federal functional regulator," *not the FDIC Corporation* (*i.e.,* FDIC-C). 15 U.S.C. § 6809(2)(C). The FDIC only has one Board, and that Board acts on behalf of the FDIC in both its receivership and corporate (or "regulatory") capacities. *See* 12 U.S.C. §§ 1812(a), 1819(a) (establishing the FDIC as a "corporate body" and authorizing its Board and the Board's "duly authorized officers or agents" to exercise "all powers granted by the provisions of this chapter," including the power "[t]o act as receiver."). This distinction is even recognized in other statutes, and Congress seemingly elected not to distinguish between FDIC-R and FDIC-C in 15 U.S.C. § 6809. *See* 12 U.S.C. §§ 1831q(p)(3), 1831q(p)(4), 1831q(p)(5), 1831q(p)(7) (noting the distinction between FDIC-R and FDIC-C). Accordingly, the FDIC's Board of Directors here properly disclosed the information obtained from the PCAOB to the FDIC-R's investigative unit.[7] (Rec. Doc. 1, ¶ 12, FDIC's Complaint).

---

[7] The Court notes that Belcher cited *FDIC v. Flagship Auto Ctr., Inc.*, No. 3:04 CV 7233, 2009 WL 484175, at *3 (N.D. Ohio Feb. 25, 2009) ("w]hen acting in its receivership capacity, the FDIC is not an agency of the United States") and *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994) ("the FDIC is not the United States") to contend that the FDIC-R is not a "federal functional regulator." Rec. Doc. 23-23, p. 14, Belcher's Opposition to the FDIC's Subpoena). Although questioning whether the FDIC-R is a United States agency is a novel argument, the Court need not address it here. Congress has

Lastly, Belcher contends that, even if the FDIC-R itself is entitled to use the PCAOB's documents, outside counsel for the FDIC-R should not be entitled to view these records because a law firm is not a "regulator" under § 7215. However, 12 C.F.R. § 309.6(a) explicitly includes the FDIC's agents among the persons authorized to receive exempt confidential and privileged records, and outside counsel is an agent of the FDIC-R. Thus, this contention by Belcher also has no merit.

### III. FDIC's MOTION FOR ENFORCEMENT OF SUBPOENA

#### a. Standard for Administrative Subpoenas

The role of the Court in an administrative subpoena enforcement proceeding is "strictly limited." *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 879 (5th Cir. 1989). Further, the standard for judicial enforcement of administrative subpoenas is that courts will enforce an administrative subpoena: "if the inquiry is within the authority of the agency, the demand is not too indefinite[,] and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

#### b. Enforcement of FDIC's Administrative Subpoena

Here, the FDIC seeks to enforce an administrative deposition subpoena issued to Belcher, a former EY auditor. (Rec. Doc. 5-5, p.1, FDIC's Memorandum in Support). Belcher clearly has relevant information regarding the audits of the Holding Company and the Bank. More specifically, Belcher only refused to appear at these depositions because of his mistaken belief that the PCAOB had improperly shared confidential information with the FDIC.

---

already concluded that the FDIC, in all its capacities, is a "Federal functional regulator." 15 U.S.C. §§ 6809(2), 7215(b)(5)(B). Further, subsequent case law after *O'Melveny* is inconsistent with Belcher's position. *See e.g., Auction Co. of Am. v. FDIC*, 132 F.3d 746, 749-50 (D.C. Cir. 1997) (distinguishing *O'Melveny* and concluding that the FDIC-R counts as the United States for the purposes of the Tucker Act).

(Rec. Doc. 23-23, p. 9, Belcher's Opposition to the FDIC's Subpoena). Thus, the Court will enforce the FDIC's administrative subpoena that was issued to Belcher.

### IV.   REMAINING MOTIONS

As a result of granting the FDIC's Motion for Summary Enforcement of Administrative Subpoena (Rec. Doc. 5), the Court now must address the three remaining motions it has before it. The Court concludes that these three motions are now moot. The two motions filed by Belcher, the Motion to Quash Subpoena (Rec. Doc. 23) and the Motion to Disqualify Counsel (Rec. Doc. 24), are moot because they only needed to be addressed if the Court found that the PCAOB had improperly shared confidential information with the FDIC. Similarly, EY's Motion to Intervene (Rec. Doc. 27) is also moot because of the Court's ruling to enforce the FDIC's administrative subpoena. Further, as an aside, the Court reviewed EY's motion and along with its accompanying reasonings for why EY believed that the PCAOB had improperly shared confidential information with the FDIC, and the Court found their arguments unconvincing.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Enforcement of Administrative Subpoena (Rec. Doc. 5)** filed by the FDIC is **GRANTED** as follows. Mr. Belcher is to appear promptly for an administrative deposition, and the Court awards the FDIC all costs associated with enforcing this Administrative Subpoena.

**IT IS FURTHER ORDERED** that the **Motion to Quash Subpoena (Rec. Doc. 23)** filed by Belcher, the **Motion to Disqualify Counsel (Rec. Doc. 24)** also filed by Belcher, and the **Motion to Intervene (Rec. Doc. 27)** filed by Ernst & Young LLP are all **DENIED AS MOOT**.

December 10, 2019

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE